UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN WASHINGTON,

    Plaintiff,

vs.                                                   Case No. 8:16-cv-1281-T-27TGW

BLUE GRACE LOGISTICS, LLC,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Dispositive Motion for Summary Judgment (Dkt. 36), which Plaintiff opposes in part (Dkt. 45). Plaintiff, a former sales employee of Defendant, brought a nine count complaint alleging violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. § 4301, *et seq.*, the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, *et seq.*, Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01-760.11(Counts I, II, IV, VIII, and IX). Plaintiff does not oppose summary judgment on his claims of race discrimination in Counts V, VI, and VII, or on his claim for FMLA interference in Count III. (Dkt. 45 at 1 n.1). Upon consideration, Defendant's motion (Dkt. 36) is GRANTED in part and DENIED in part.

## I. MATERIAL UNDISPUTED FACTS

Plaintiff is a service member in the U.S. Navy Reserves, having served in the military since June 2008. (Klingensmith Aff. ¶ 6, Dkt. 36-2; Washington Aff. ¶ 4, Dkt. 45-1). He began working

1

for Defendant on June 1, 2015 as a sales representative. (Dkt. 36 ¶ 6). To take off work, he was required to obtain permission from his supervisor. (Washington Dep. 143:2-18, July 7, 2017, Dkt. 47; Klingensmith Aff. ¶ 11, Dkt. 36-2). On March 7, 2016, he provided written notice of annual military leave for March 14 through March 25, 2016. (Dkt. 36-26). He attended military training at MacDill Air Force Base. (Washington Dep. 268:17-269:1, Dkt. 48).

On March 11, the last business day before his military training, Plaintiff was placed on a performance plan. (Counseling Record, Mar. 11, 2016, Dkt. 36-30). That same day, at 3:56 p.m., he notified his supervisor that he had a personal emergency and would be out the remainder of the day, to which his supervisor responded "Will be in touch[.]" (Text Message Exchange, Mar. 11, 2016, Dkt. 45-3). On March 18, while on military leave, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission. (Dkt. 36-32). On March 23, he submitted a request for FMLA leave for June 13 through July 29, 2016. (Dkt. 36-33). On March 25, he was terminated. (Klingensmith Aff. ¶ 18, Dkt. 36-2). This action followed.

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp.*

*v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citation omitted). On the other hand, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" *Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994)).

## III. DISCUSSION

### A. Counts I and II: USERRA Violations - Discrimination and Retaliation

In Counts I and II, Plaintiff brings claims for discrimination and retaliation in violation of USERRA. USERRA was enacted to prohibit employment discrimination based on military service. 38 U.S.C. §§ 4301, 4311. "Section 4311 prohibits employers from discriminating against employees on the basis of military service and retaliating against individuals[.]" *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1234 (11th Cir. 2005).

#### i. Discrimination - Failure to Promote; Failure to Return to Previously Held Position

Section 4311(a) provides that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied . . . retention in employment . . . or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). An employer engages in a prohibited action under subsection (a) if the employee's membership, service, or obligation for service in the military is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in

3

absence of such membership, service, or obligation for service. 38 U.S.C. § 4311(c)(1).

To establish a *prima facie* case of discrimination, Plaintiff must show by a preponderance of the evidence that his status as a reservist was a substantial or motivating factor in the employment action. *Coffman*, 411 F.3d at 1238. "Indeed, [m]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Id.* (alteration in original, internal quotations and citation omitted). A discriminatory motive under USERRA can be inferred from a variety of circumstances, such as:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* (citation omitted). Once Plaintiff meets his burden, "the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* at 1238–39.

First, Defendant contends that Plaintiff cannot show that his military service was a substantial or motivating factor when he was not promoted or returned to his previously held position after he returned from his September 2015 military training, as alleged in his Third Amended Complaint (See Dkt. 24, ¶¶ 14 - 16; 38 - 40). Rather than attempting to rebut this contention, Plaintiff focuses on his March 2016 termination, contending that his status as a reservist was a motivating factor in his termination.

Since he fails to respond to Defendant's motion with respect to his allegations that Defendant violated USERRA by failing to either return him to his previously held position or promote him after he returned from his September 2015 annual leave, Plaintiff is deemed to have abandoned those

4

claims. *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Summary judgment is therefore due to be granted on Count I, Plaintiff's USERRA discrimination claim for failing to promote or return him to his previously held position after returning from his 2015 military training.

### ii. Retaliation - March 26, 2016 Termination

Section 4311(b) prohibits employers from taking adverse employment actions against employees who seek to enforce USERRA's protections. 38 U.S.C. § 4311(b). An employer who takes an adverse action against an employee who exercises a right under USERRA has engaged in retaliatory conduct unless the employer shows it would have taken the action in the absence of the employee's protected activity.[1] 38 U.S.C. § 4311(b)-(c);[2] *see Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014) (per curiam). The "but-for" test utilized in USERRA discrimination cases is utilized in USERRA retaliation cases. *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *see Ward*, 580 F. App'x at 739.

The requisite discriminatory motive for a USERRA retaliation claim can be inferred from a variety of circumstances. *Coffman*, 411 F.3d at 1238; *Sheehan*, 240 F.3d at 1013. For example, Plaintiff may meet his burden by showing a close temporal proximity between his protected activity and the adverse employment action. *See Ward*, 580 F. App'x at 739 (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (per curiam) (Title VII retaliation case)). And,

---

[1] Plaintiff contends that under USERRA, Defendant could only terminate him for cause, citing 20 C.F.R. § 1002.248. Section 1002.248 does not apply, however, because Plaintiff's most recent period of service did not exceed 30 consecutive days. 20 C.F.R. § 1002.247; *see* 38 U.S.C. § 4316(c); *Warren v. Int'l Bus. Machines Corp.*, 358 F. Supp. 2d 301, 310 (S.D.N.Y. 2005).

[2] Section 4311(c) states, in pertinent part, that "An employer shall be considered to have engaged in actions prohibited . . . under subsection (b), if the person's . . . exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's . . . participation or exercise of a right." 38 U.S.C. § 4311(c).

exercising the right to reemployment under USERRA is protected activity. 38 U.S.C. § 4312; *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007) ("Section 4312 of USERRA provides a right to reemployment for members of the armed services who (1) properly notify their employers of the need for a service-related absence, (2) take cumulative absence of no more than five years and (3) properly report to work or reapply for employment, depending upon the length of the absence."). Plaintiff contends that his participation in his annual military training in March 2016 was a motivating factor in his termination, pointing to the close temporal proximity between providing notice of his leave and his termination just two weeks later.

On March 7, Plaintiff notified Reese Weathers, his supervisor, that he was required to attend two weeks of annual training with the U.S. Navy Reserves from March 14 through March 25, 2016. (Washington Aff. ¶ 7, Dkt. 45-1; Klingensmith Aff. ¶ 17, Dkt. 36-2; March 7, 2016 Email, Dkt. 36-26). He took his annual training, but before he could return to work, he was terminated on March 25. (Washington Aff. ¶ 13, Dkt. 45-1). He was in the process of exercising his rights under section 4312 when he was terminated.[3] And the temporal proximity between his exercise of those rights and the adverse employment action is "'very close.'" *Thomas*, 506 F.3d at 1364 (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

A reasonable jury could therefore find that Defendant engaged in retaliatory conduct by terminating Plaintiff eighteen days after he notified his supervisor of his annual training and while he was completing that training. *Wallace*, 479 F.3d at 625; *Ward*, 580 F. App'x at 739. Accordingly, to prevail on its summary judgment motion, Defendant must show "that legitimate reasons, standing

---

[3] The Ninth Circuit, in *Wallace*, found that a reservist exercises this right "whenever he seeks reemploymnet after complying with the requirements of the section." 479 F.3d at 625. Liberally construing USERRA "for the benefit of those who left private life to serve their country," under these circumstances, it is reasonable to infer that Plaintiff would have reported to work on March 28, the next business day after completion of his military training, if he had not been terminated. *Coffman*, 411 F.3d at 1238.

alone, would have induced [it] to take the same adverse action." *Coffman*, 411 F.3d at 1238; *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *see Ward*, 580 F. App'x at 739.

Defendant contends that its reasons for terminating Plaintiff were his poor performance and leaving work without permission on March 11 ("... [Defendant's] decision to terminate him after he walked off the job on March 11, 2016 in violation of his counseling records and Performance Improvement Plan."). The record evidence, however, reveals inconsistencies between those reasons and the events which took place after March 11.

For example, although Plaintiff's job performance was less that satisfactory in several respects, his January 2016 performance review reflects, among other things, "competent at present level and can move across functions within 6 to 12 months," "new hires will look to you for advice and coaching," and "proficient in understanding and representing the companies." (Washington Aff. ¶ 5). And rather than being terminated, he was placed on a performance plan on March 11, the last business day before he began military training, presumably to begin once he returned from his annual leave.[4] (Counseling Record, Mar. 11, 2016, Dkt. 36-30). That same day, at 3:56 p.m., he notified his supervisor that he had a personal emergency and would be out the remainder of the day, to which his supervisor responded "Will be in touch[.]" (Text Message Exchange, Mar. 11, 2016, Dkt. 45-3). Plaintiff and his supervisor continued to exchange work related text message while Plaintiff was attending military training. (Washington Aff. ¶ 10, Dkt. 45-1; Text Message Exchange, Mar. 11-17, 2016, Dkt. 45-3). Plaintiff was not terminated until the business day before he was to return from military training.[5]

---

[4] Indeed, Plaintiff, as of March 7, was "in the middle of the pack in terms of sales[.]" (Washington Aff. ¶ 6, Dkt. 45-1).

[5] Plaintiff also makes a persuasive point that Defendant did not challenge Plaintiff's claim for unemployment benefits based on job abandonment, which is plausibly inconsistent with its stated reasons for terminating Plaintiff.

7

A reasonable jury could therefore find that Plaintiff exercised a right under USERRA, his participation in his annual military training in March 2016 was a motivating factor in his termination, and that Defendant did not have a legitimate reason to do. *Wallace*, 479 F.3d at 625; *Coffman*, 411 F.3d at 1238; *Sheehan*, 240 F.3d at 1013; *see Ward*, 580 F. App'x at 739. There are material disputed facts which preclude summary judgment. Whether Defendant retaliated against Plaintiff in violation of USERRA will therefore be determined by the jury.

### B. COUNT IV - FMLA Retaliation

In Count IV, Plaintiff brings a FMLA retaliation claim, asserting that Defendant retaliated against him by terminating him two days after he requested FMLA leave for a surgical procedure. Defendant moves for summary judgment, arguing that Plaintiff fails to establish a *prima facie* case of retaliation, and even if he has, it had a legitimate, non-retaliatory reason for his termination.

A FMLA retaliation claim uses the *McDonnell Douglas* burden-shifting framework. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008) (per curiam) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the FMLA, Plaintiff must show that (1) he engaged in an activity protected by the FMLA; (2) he suffered an adverse employment action; and (3) the employer's decision was causally related to the protected activity. *Id.* If Plaintiff establishes his *prima facie* case, Defendant must then present legitimate, non-retaliatory reasons for the adverse employment action. *Id.* If Defendant meets this burden, the burden shifts back to Plaintiff to produce evidence that will permit a reasonable factfinder to conclude that the employer's stated reasons are mere pretext for its retaliatory actions. *Id.*

"Under the FMLA an employee need not be currently exercising [his] rights or currently eligible for FMLA leave in order to be protected from retaliation." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1276 (11th Cir. 2012). And, protected activity under the

8

FMLA includes "a pre-eligible request for post-eligible leave . . . because the FMLA aims to support both employees in the process of exercising their FMLA rights and employers in planning for the absence of employees on FMLA leave." *Pereda*, 666 F.3d at 1276.

Defendant contends that Plaintiff did not engage in a statutorily protected activity because his "purported FMLA notice has no basis in fact[.]" Defendant's contention, however, goes to Plaintiff's credibility.[6] And, "[i]t is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

Plaintiff's evidence shows that on March 23, 2016, he submitted "a pre-eligible request for post-eligible leave." (Email FMLA Request, Mar. 23, 2016, Dkt. 45-5);[7] *Pereda*, 666 F.3d at 1276. He therefore engaged in protected activity. It is undisputed that Plaintiff was terminated on March 26, 2016. The close temporal proximity between the request for FMLA leave and termination "is more than sufficient to create a genuine issue of material fact of causal connection." *Martin*, 543 F.3d at 1268. To prevail on summary judgment, Defendant must present legitimate, non-retaliatory reasons for terminating Plaintiff. *Id.*

Defendant contends that Plaintiff was terminated for poor job performance and job abandonment. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that these reasons are pretextual, considering the work related text messages exchanged between Plaintiff and his supervisor after his purported job abandonment and that he was placed on a

---

[6] Defendant points out that Plaintiff selected the date of surgery, (Washington Dep. 311:2-7, Dkt. 48), did not call a physician to schedule the surgery, (*id.* at 311:8-10), had not seen a "GI" since 2014, (*id.* at 315:19-25), and had not had the surgery as of the date of his deposition, (*id.* at 315:14-18).

[7] Defendant's contention that his notice was insufficient is unsupported. Plaintiff's email request stated "I would like to submit a request for leave for a work related medical condition . . . . My leave is considered an FMLA condition, and the recovery period per my doctor will be 6-8 weeks." (Email FMLA Request, Mar. 23, 2016, Dkt. 45-5).

performance improvement plan, which presumably would have begun when he returned from his annual military training. Accordingly, summary judgment is due to be denied on Plaintiff's FMLA retaliation claim, Count IV.

### C. COUNT VIII - Title VII Retaliation

In Count VIII, Plaintiff brings a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964. "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) []he engaged in an activity protected under Title VII; (2) []he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "Additionally, Title VII retaliation claims require proof that '[the] protected activity was a but-for cause of the alleged adverse action by the employer.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016), *cert. denied sub nom. Trask v. Shulkin*, 137 S. Ct. 1133, 197 L. Ed. 2d 176 (2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013) (alteration in original)).

The causation prong can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Where the claim is based on circumstantial evidence, as here, the burden shifting framework of *McDonnell Douglas* applies. *Trask*, 822 F.3d at 1191. When Plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action. *Id.* at 1194. And, "[t]he ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (quotation marks and citation omitted)

Plaintiff engaged in protected conduct by filing the EEOC charge on March 18 and suffered

10

an adverse employment action when he was terminated a week later. 42 U.S.C. § 2000e–3(a); *Crawford*, 529 F.3d at 970. And, although Plaintiff relies only on temporal proximity to meet this causation burden, the proximity is "very close."[8] *Thomas*, 506 F.3d at 1364. He therefore establishes a *prima face* case of Title VII retaliation. As discussed, questions of material fact remain as to whether Defendant's reasons for his termination, job abandonment and poor performance, are pretextual. Summary judgment on Plaintiff's claim for Title VII retaliation, Count VIII, will therefore be denied.

### D. Count IX - Violation of the Florida Civil Rights Act - Retaliation

In Count IX, Plaintiff brings his final claim, retaliation in violation of the Florida Civil Rights Act. Defendant contends that if Plaintiff is unable to maintain a Title VII claim, he cannot maintain a claim based on the same conduct under the FCRA. (Dkt. 36 at 24). As discussed, Plaintiff can maintain his Title VII retaliation claim. Because "decisions construing Title VII guide the analysis of claims under the [FCRA]," summary judgment as to Plaintiff's claim for retaliation in violation of the FCRA will be denied. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998); *Palm Beach Cty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017), *review denied*, No. SC17-1186, 2017 WL 4685625 (Fla. Oct. 19, 2017) (recognizing that "[t]he FCRA is patterned after Title VII" and that "federal case law on Title VII applies to FCRA claims" (citation omitted)).

## IV. CONCLUSION

Accordingly, Defendant's Dispositive Motion for Summary Judgment (Dkt. 36) is **GRANTED** on Plaintiff's USERRA discrimination claim for failing to promote or return him to his

---

[8] Plaintiff does not rebut Defendant's argument that he did not directly complain about racial harassment and discrimination and that no employee observed his "growing discomfort." (Dkt. 36 at 24 n.5).

previously held position after returning from his 2015 military training (Count I), FMLA interference claim (Count III), 42 U.S.C. § 1981 claim (Count V), Title VII racial discrimination claim (Count VI), and FCRA discrimination claim (Count VII).

As to his remaining claims, the Motion (Dkt. 36) is **DENIED**.

**DONE AND ORDERED** this **3rd** day of January, 2018.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record